UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

SECURITIES INVESTOR PROTECTION
CORPORATION,

    Plaintiff-Applicant,    Adv. Proc. No. 01-4257 RJK

v.

MJK CLEARING, INC.,

    Defendant.

---

## TRUSTEE'S FIRST INTERIM REPORT
## FOR THE PERIOD FROM
## SEPTEMBER 27, 2001 THROUGH DECEMBER 31, 2001

TO THE HONORABLE ROBERT J. KRESSEL,
UNITED STATES BANKRUPTCY JUDGE

    James P. Stephenson, as trustee (the "Trustee") for the liquidation of MJK Clearing, Inc. (the "Debtor"), respectfully submits his First Interim Report (this "Report") in accordance with the terms of this Court's order entered on November 5, 2001, and pursuant to Section 78fff-1(c) of the Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. § 78fff-1(c). This Report covers the period from September 27, 2001 through December 31, 2001.

### I. Background

    1. The Debtor was a member of the Securities Investors Protection Corporation ("SIPC") and a broker-dealer registered with the Securities and Exchange Commission ("SEC"). The Debtor was engaged in the business of acting as a clearing firm for stock and other equity transactions. The Debtor was a clearing firm for its wholly owned

subsidiary, Miller Johnson Steichen Kinnard, Inc. ("MJSK"), and sixty-four other independent, non-affiliated introducing firms (the "Outside Introducing Firms"). For MJSK and the Outside Introducing Firms, the Debtor cleared trades for approximately 175,000 individual account holders (the "Customers").

2. On September 25, 2001, the Debtor reported that Native Nations Securities ("Native Nations"), a broker-dealer located in New Jersey, failed to make a $60 million payment owed to the Debtor on a stock loan transaction. As a result of this failure, the Debtor failed to meet its capital requirements and was required to inform federal regulatory agencies of the failure.

3. Upon receiving notice of the Debtor's capital shortfall, SIPC, pursuant to SIPA section 78eee(a)(3), filed an application for a protective decree in order to protect the interests of the Customers.

4. On September 27, 2001 (the "Filing Date"), the Honorable Richard H. Kyle, Judge of the United States District Court for the District of Minnesota, entered an Order Commencing SIPA Liquidation Proceeding (the "Protective Order"), finding, among other things, that the Debtor's customers were in need of the protections afforded by SIPA, appointing James P. Stephenson as the trustee for the liquidation of the Debtor, appointing Faegre & Benson LLP as counsel for the Trustee, staying certain actions in connection with the Debtor and its property and removing the liquidation proceeding to this Court.

II. **Commencement of the Trusteeship**

5. Pursuant to a Motion dated October 24, 2001, this Court entered an Order granting the Trustee's Motion to Approve Publication of Notices, Procedures for Resolution of Clams and other Relief on November 5, 2001 (the "Housekeeping Order")

which ordered, among other things, that: (i) notice of the commencement of the liquidation proceeding (the "Notice") be published in The Wall Street Journal (national and international editions), The St. Paul Pioneer Press and Dispatch, The Minneapolis Star Tribune, The Duluth Tribune, Bloomberg's website and the website established by the Trustee for the Debtor; (ii) the Notice, explanatory letters, claim forms and instructions be provided to each person who, according to the Debtor's books and records, appeared to have been a customer of the Debtor with an open account within the preceding twelve (12) months, by mailing to each such person, at the address appearing in the Debtor's books and records, copies of such documents; and (iii) the Notice, explanatory letters, claim forms and instructions be provided to each creditor, other than customers, of the Debtor, by mailing to each such creditor, at the address appearing in the Debtor's books and records, copies of such documents.

6. Pursuant to the Housekeeping Order, the Notice was published on November 15, 2001 in The Wall Street Journal (national edition), The St. Paul Pioneer Press and Dispatch, The Minneapolis Star Tribune and The Duluth Tribune, and on November 20, 2001 in The Wall Street Journal (international edition). The Trustee was not able to publish the Notice on Bloomberg's website as the website does not publish such notices.

7. Also pursuant to the Housekeeping Order, the required Notice, explanatory letters, claim forms and instructions were mailed, starting on November 16, 2001, and ending on November 27, 2001, to the Customers, the Outside Introducing Firms, other broker-dealers, creditors of the Debtor and some 35,000 former account holders. Additionally, the Trustee's staff has mailed additional copies of the Notice, explanatory letters, claim forms and instructions as requested by customers, broker-dealers or other potential creditors.

8. The Housekeeping Order also fixed a bar date for the filing of claims. Pursuant to Paragraph 7 of the Housekeeping Order and SIPA section 78fff-2(a)(3), no claim of any customer or creditor received by the Trustee after May 15, 2002 will be allowed. Moreover, pursuant to Paragraph 4 of the Housekeeping Order and SIPA section 78fff-2(a)(3), any claim of a customer for net equity received by the Trustee after January 14, 2002 need not be paid or satisfied in whole or in part out of customer property, and, to the extent such claim is satisfied from monies advanced by SIPC, it shall be satisfied in cash or securities (or both) as the Trustee may determine to be the most economical to the estate.

9. The Housekeeping Order also required that the Trustee preside at a meeting of creditors for the purpose of examining the Debtor and its officers and directors and conducting such other related business. On December 17, 2001, at the Radisson Plaza Hotel in downtown Minneapolis, the Trustee held the meeting of creditors. Approximately 20 individuals attended the meeting. Todd Miller (a former officer of the Debtor) appeared and submitted to examination under oath at the meeting of creditors.

10. Additionally, pursuant to Paragraph 8 of the Housekeeping Order and SIPA section 78eee(b)(6)(B), a hearing regarding the disinterestedness of the Trustee and the Trustee's counsel, Faegre & Benson, LLP, was held on December 5, 2001. Prior to this hearing, declarations of disinterestedness were filed by the Trustee and the Trustee's counsel. None of the Court, the Trustee or the Trustee's counsel received any objections to the appointment of the Trustee or the Trustee's counsel on the grounds that they are not disinterested persons within the meaning of the provisions of SIPA.

## III. Administration of the Estate

### A. *Trustee's Staff*

11. In addition to Faegre & Benson, LLP, the Trustee has employed the following firms and individuals to perform various functions and otherwise assist the Trustee in the orderly liquidation of the Debtor's estate and the satisfaction of customer claims: Financial Industry Technical Services, Inc. ("FITS"), Brokerage Consulting Services, Inc., PricewaterhouseCoopers LLP, Robert J. Dittmar and Sarkis A. Kupelian (collectively, the "Staff"). The activities undertaken by the Staff in the orderly liquidation have included, but are not limited to, the transfer of accounts, the assessment of assets available to the estate, the investigation and analysis of trading activity, the processing, analysis and resolution of customer claims and the preparation of an inventory of the Debtor's physical assets. The Staff operate out of several locations. In particular, the FITS personnel currently employed by the Trustee are presently operating out of the Debtor's former offices located at 5500 Wayzata Blvd., Minneapolis, Minnesota.

### B. *Trustee's Activities*

i. <u>Securing the Debtor's Property</u>

12. Immediately following his appointment, the Trustee had the Debtor's premises and property secured. Thereafter, with the assistance of counsel and his staff, the Trustee changed the Debtor's locks, safeguarded the Debtor's property and notified the financial institutions holding various of the Debtor's assets to freeze all such assets.

ii. <u>Transfer of Accounts, Sale of MJSK Stock</u>

13. Following the Debtor's collapse, approximately 175,000 active customer accounts, whose trades had previously cleared through the Debtor, were frozen. In an effort to remedy the immediate crisis and prevent further harm to the Customers, the Trustee quickly marketed the principal assets of the Debtor, the accounts and the stock of MJSK, by soliciting bids and proposals for the transfer of those assets.

14. The Trustee reviewed six proposals regarding the purchase of these assets. After permitting the bidders time to conduct due diligence, the Trustee entered into (1) an agreement (the "Account Transfer Agreement") with SWS Securities, Inc. ("SWS") for the transfer of substantially all of the Customers' accounts to SWS and (2) a Stock Purchase Agreement (the "Sale Agreement"; collectively, with the Account Transfer Agreement, the "Transfer Agreements") with Stockwalk Group, Inc. ("Stockwalk") pursuant to which Stockwalk purchased all of the capital stock of MJSK held by the Debtor.

15. The Transfer Agreements had the effect of enabling most customers to gain access to their entire accounts, thereby facilitating resumed trading, while also yielding $3,200,000 to the Debtor's estate.

iii. <u>Closing Out Positions</u>

16. As of the Filing Date, the Debtor had 2,377 unsettled trades totaling $91,264,785. The Trustee has worked diligently to close out the Debtor's open trade positions.

iv. <u>Closing Out Stock Loan Transactions</u>

17. As of the Filing Date, the Debtor was a party to approximately 400 stock loan transactions where it served either as a borrower of securities, a lender of

securities or a conduit to parties making securities loans. The Trustee has closed out most of the Debtor's open stock loan transactions and continues to work on the remaining open stock loan transactions.

    v.    Other Activities

18. The Trustee has given notice of claims under various insurance policies held by the Debtor, including an All Risks Excess of SIPC Insurance policy underwritten by Lloyds of London and a Financial Institution Bond issued by National Union Fire Insurance Company.

19. The Trustee has recovered funds totaling approximately $62,600,000 from more than 200 bank accounts previously held in the Debtor's name. The Trustee is continuing to seek to recover various other deposits or funds in other bank accounts held in the Debtor's name.

20. The Trustee, his staff and his counsel have responded to countless phone calls and written inquiries from customers, creditors and vendors. The Trustee has also responded to inquiries from securities regulators and federal and local law enforcement agencies, and has endeavored in all cases to cooperate to the fullest possible extent.

21. The Trustee also met on November 20, 2001, with a group of creditors who issued secured demand notes to the Debtor to discuss issues specific to them as a class of creditors.

22. The Trustee and his staff have devoted a significant amount of time reviewing the information contained in the Debtor's books and records to facilitate claims processing and the Trustee's recordkeeping, as well as to streamline these processes.

23. The Trustee has investigated the need for services provided pursuant to the Debtor's executory contracts or unexpired leases, and to the extent he has determined that such services are necessary for the liquidation of the estate, the Trustee has attempted to assume those leases and contracts on terms favorable to the estate. In certain circumstances, the Trustee has negotiated short-term agreements for the continued provision of such services.

24. To the extent that the Trustee has determined that any services provided pursuant to executory contracts or unexpired leases are required by any entities other than the Debtor, the Trustee has attempted to assign those contracts and have the corresponding obligations assumed in order to reduce the estate's potential liabilities.

25. There is at least one executory contract which the Trustee is still negotiating with the other contractual party and a potential assignee regarding the assumption and assignment of that particular contract. All remaining executory contracts and unexpired leases have been rejected by the Trustee.

**IV. Claims Processing**

26. As noted above in Paragraph 7, the Notice and notice of the claims filing procedure was given by mail and publication in accordance with the Housekeeping Order. Pursuant to SIPA section 78fff-2(a)(3), the date by which claims must be filed is governed by the date of the publication of notice of commencement of the liquidation and the provisions of the Housekeeping Order. Consequently, in this liquidation proceeding, the claims processing procedures are as follows:

27. For customers to obtain the maximum protections afforded by SIPA, the Trustee must receive their claims on or before January 14, 2002. Claims received on or

before May 15, 2002 (the statutory six-month bar date for the filing of all claims) may receive either securities or their Filing Date cash equivalent, whichever the Trustee determines is most economical to the estate.

28. All other claims must be received on or before May 15, 2002. No claim received by the Trustee after May 15, 2002 will be allowed. 15 U.S.C. § 78fff-2(a)(3).

29. As of December 28, 2001, a total of 10,648 customer claims had been received by the Trustee. In addition, a total of 13 claims from claimants other than customers had been received by the Trustee.

30. The Trustee's staff and FITS personnel docket claims as they are received. Currently, claims are being processed and reviewed following their receipt for appropriate disposition by SIPC and the Trustee. As of December 28, 2001, the Trustee's staff and FITS personnel had reviewed 3,949 claims, agreeing with the claimant as to 3,291 of these claims and disagreeing with the claimant as to 658 claims. Of the claims reviewed by the Trustee's staff and FITS personnel, SIPC has reviewed a total of 3,047, approving 2,099, denying 480 and agreeing with the claimant that nothing is owed in 468 cases. Of the claims approved by the Trustee and SIPC, all but three have already been satisfied by the transfer of customer accounts to SWS.

31. As of December 28, 2001, the Trustee's staff had reviewed 38 claims that disagree with the books and records of the Debtor. These particular claims will require further research and investigation prior to a determination by the Trustee of their accuracy or validity. An additional three claims are incomplete; the Trustee is in the process of obtaining additional information from claimants to complete these claims.

## V. Trustee's Investigation

32. SIPA requires the Trustee "to investigate the acts, conduct, property, liabilities, and financial condition of the debtor, the operation of its business, and any other matter, to the extent relevant to the liquidation proceeding, and report thereon to the court." 15 U.S.C. § 78fff-1(d).

33. The Trustee, his counsel and his staff have commenced the initial stages of the investigation of the Debtor's financial affairs and business dealings. In this connection, the Trustee has conducted interviews with relevant people and begun reviewing the Debtor records. In addition, the Trustee has made requests for numerous Rule 2004 examinations. At this point, the Trustee is unable to determine when his investigation will be completed.

## VI. Pending Litigation

34. Upon the entry of the Protective Order, all litigation against the Debtor was automatically stayed pursuant to Section 362 of the Bankruptcy Code.

35. Also upon the entry of the Protective Order, all creditors and other persons were enjoined from selling, setting-off or generally interfering with any assets or property of the Debtor. Additionally, all creditors and other persons were, for a period of twenty-one days, enjoined from, among other things, enforcing any liens, exercising rights of setoff, causing the liquidation of a repurchase agreement, and exercising a contractual right to cause the liquidation of a contract for the loan of a security.

36. The Trustee has commenced adversary proceedings against Native Nations, and has obtained a protective order prohibiting the dissipation of Native Nation's assets. The Trustee is also contemplating commencing several other adversary proceedings.

37. Several parties, including Maple Securities, U.S.A., Inc. and Ferris, Baker Watts, Inc., have commenced adversary proceedings against the Trustee or the Debtor's estate concerning certain stock loan transactions. The Trustee has responded with the appropriate pleadings.

**VII. Trustee's Accounting**

38. Through his staff, the Trustee has inventoried all securities, cash, and similar assets previously held by the Debtor at its premises. These securities, cash, and similar assets, as well as those formerly on deposit with the Depository Trust Company or other depositories, have been and will be used to satisfy approved customer claims and other creditor claims if possible.

39. Through October 30, 2001, the Trustee has requested, and obtained from SIPC, advances in the amount of $177,000,000 (some of which has been repaid), which were used primarily to purchase securities for customer accounts, but which were also used to pay other expenses incurred by the Trustee.

40. As of December 28, 2001, the Trustee had $2,092,180.84 on deposit in a demand deposit account at Wells Fargo Bank, National Association. In addition, as of December 28, 2001, the Trustee had approximately $17,000,000 in a money market account at Wells Fargo Bank, National Association.

41. The foregoing represents a summary of the material events which have occurred from September 27, 2001 through December 31, 2001.

Dated: December 31, 2001

*James P. Stephenson*,
Trustee for the Liquidation
of MJK Clearing, Inc.

c/o Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: (612) 766-1600

M1:830322.04

# AFFIDAVIT OF SERVICE

STATE OF MINNESOTA )
                              ) ss.
COUNTY OF HENNEPIN)

        Letha D. Huffman of the City of Blaine, County of Anoka in the State of Minnesota, being duly sworn, says that on the 31st day of December, 2001, she served the annexed **Trustee's First Interim Report for the Period from September 27, 2001 through December 31, 2001** and this **Affidavit of Service** on the persons listed on the attached list by placing a copy thereof in an envelope and arranging for the deposit of same, postage prepaid, in the United States Mails at Minneapolis, Minnesota.

                                                Letha D. Huffman

Subscribed and sworn to before me
this 31st day of December, 2001.

Notary Public

M1:830814.01

PENNY L. PASZKIEWICZ
Notary Public
Minnesota
My Commission Expires Jan. 31, 2005

Philip T. Colton
Stockwalk Group, Inc.
5500 Wayzata Blvd., Suite 800
Minneapolis, MN 55416

MJK Clearing, Inc.
c/o Todd Miller
5500 Wayzata Blvd., Suite 800
Minneapolis, MN 55416

The Stockwalk Group, Inc.
James L. Baillie
Clinton E. Cutler
Fredrikson & Byron
1100 International Centre
900 Second Avenue South
Minneapolis, MN 55402

SIPC
c/o Ken Caputo
805 Fifteenth Street, N.W.
Suite 800
Washington, D.C. 20005-2207

Byron Bequette
MathStar, Inc.
527 Marquette Ave.
Minneapolis, MN 55402

Mark C. McCullough
The Colonnade
Suite 730
5500 Wayzata Blvd.
Minneapolis, MN 55416

Henry F. Minnerop, Esq.
Sidley Austin Brown & Wood
875 Third Avenue
New York, NY 10022

Terence M. Fruth
Thomas E. Jamison
Fruth, Jamison & Elsass, P.A.
4705 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

Investment Centers of America
c/o Thomas B. Hatch
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015

Wells Fargo Bank, N.A.
c/o Mark J. Kalla
Bruce A. MacKenzie
Dorsey & Whitney LLP
50 South Sixth Street
Minneapolis, MN 55402

Mr. Richard Kirby
Dyer Ellis & Joseph
600 New Hampshire Avenue, N.W.
Suite 1100
Washington, D.C. 20037

John R. Lee
Sonia U. Chae
Securities & Exchange Commission
Midwest Regional Office
500 W. Madison Street, Suite 1400
Chicago, IL 60661

Mr. James K. Langdon II
Dorsey & Whitney LLP
50 South Sixth Street
Minneapolis, MN 55402

Teri M. Swanson
Securities and Exchange Commission
450 Fifth Street, N.W. (mail stop 6-6)
Washington, D.C. 20549-0606

Stephen D. Lerner
Squire, Sanders & Dempsey L.L.P.
312 Walnut Street
Suite 3500
Cincinnati, OH 45202

The Stockwalk Group, Inc.
c/o Leonard, Street and Deinard
Steven D. DeRuyter
Larry B. Ricke
150 S. Fifth St., Suite 2300
Minneapolis, MN 55402

Native Nations Securities, Inc.
c/o Proskauer Rose LLP
Attn: Michael E. Foreman, Esq.
    Peter J.W. Sherwin, Esq.
1585 Broadway
New York, NY 10036-8299

Pax Clearing Corporation
c/o Paul L. Ratelle
Fabyanske, Westra & Hart, P.A.
920 Second Avenue South, Suite 1100
Minneapolis, MN 55402

Pax Clearing Corporation
c/o Stephen P. Bedell
Scott M. Murray
Gardner, Carton & Douglas
321 North Clark Street
Chicago, IL 60610

George Vasios
Securities & Exchange Commission
Midwest Regional Office
Attn: Bankruptcy Section
500 W. Madison Street
Suite 1400
Chicago, IL 60661

Peter D. Wolfson, Esq.
Holly S. Falkowitz, Esq.
Sonnenschein Nath & Rosenthal
1221 Avenue of the Americas, 24th Floor
New York, NY 10020

Affiliated Financial Services, Inc.
c/o Barry L. Wilkie
Jones & Keller, P.C.
1625 Broadway, Suite 1600
Denver, CO 80202

David Fogel, Esq.
RBC Dain Rauscher Incorporated
60 South Sixth Street
Minneapolis, MN 55402

Nauni Jo Manty
Blackwell Igbanugo Engen & Saffold P.A.
3601 W. 76th Street
Suite 250
Minneapolis, MN 55435

Elissa Isaacs
Piper Marbury Rudnick & Wolfe
203 North LaSalle Street
Suite 1800
Chicago, IL 60601-1293